DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### NOVEMBER TERM, 1856.

---

## TEN EYCK *vs.* RUNK.

1. Where a party, by his admissions, has qualified his own right, and another claims to succeed him, he succeeds only to the right as qualified at the time his title commenced.

2. Where title deeds convey a tract of land by metes and bounds, which embraces within its boundaries a water-power, without specifying the extent of that power, in a suit brought for injury caused by using such water-power, it is competent for the plaintiff to show to what extent the right was claimed and exercised by a former owner and occupier of the land, and for that purpose the admissions of such former owner, as to the extent which he claimed and occupied the right, are admissible against his successor or grantee.

3. But if the extent of a right to use a water-power is fixed by the title deeds, the admissions of a former owner, that he only claimed and exercised a lesser right than is fixed by deed, are not admissible against a subsequent owner.

---

In error to the Somerset Circuit Court.

The facts of the case sufficiently appear in the opinion delivered in this court.

*G. H. Brown,* for plaintiff in error.

*F. T. Frelinghuysen,* for defendant.

The opinion of the court was delivered by

The CHANCELLOR. This cause was tried at the Circuit Court of the County of Somerset, and the jury rendered their verdict for the defendant. At the trial, several bills of exceptions were taken, on behalf of the plaintiff, to the ruling of the judge in the admission of evidence. The record is here by writ of error; and the only question presented for our decision is, whether the judge ruled right in rejecting testimony which was offered by the plaintiff on the trial.

The plaintiff is the owner of about forty acres of lowland along the west side of the North Branch. The defendant owns lands below on the river, with a mill property and dam there adjoining the plaintiff's land. The plaintiff brought his action against the defendant to recover damages for the overflow of the plaintiff's meadows by reason of the dam.

The specific complaint alleged in the declaration is, that the defendant, " on the first day of July, 1835, did anew erect and make a certain dam across said river, below and opposite the said tract of land of the plaintiff, and hath continued the same from thence hitherto, and hath thereby obstructed the free passage of the water of the said river below and opposite the said tract of the plaintiff," &c.

The plaintiff, in his opening, admitted that the dam had been in the river for more than twenty years, and offered to prove that within that period the dam had been gradually raised, and that within the last fifteen years it had been raised one foot. In fact the only question made by the plaintiff, and in issue between the parties at the trial, was whether the dam had been raised within twenty years.

Several witnesses were examined, on the part of the

plaintiff, to prove the fact of the raising the dam. He proved that, prior and up to November, 1820, Jacob Bayles was in possession of the mill property now in question, as the reputed owner; that one John Gulick bought of Bayles' administrators, James Todd of Gulick, and John Runk, the defendant, of James Todd. The plaintiff then offered in evidence the title deeds of the tract of land on which the mill and dam are located, from Robert Bayles down to the defendant, as follows, to wit:

1. A deed from Robert Bayles and others, administrators of John Bayles, deceased, to John Gulick, dated October 1st, 1821.

2. A deed from John Gulick to John Runk and James Todd, dated the 13th of May, 1822.

3. A deed from James Todd to John Runk, dated the 14th of January, 1824.

The plaintiff then, after proving the signature of John Bayles, offered in evidence the following writing:

Feb. 17th, 1818.

Sir:—I received a notice from you yesterday that I should take down my mill-dam. I saw Mr. Bullock this morning; he says when he repaired the dam last week, he made it only three feet high. I have a grant in my possession which gives me the right to build the dam three feet high. I saw this morning the night-ice had lodged on the dam. If the dam is higher than three feet I will take it down.

[Signed]          JOHN BAYLES.

The defendant objected to the admission of this letter as evidence, and the court sustained the objection.

Was this evidence properly rejected by the court?

To answer this question correctly, we must ascertain, with some precision, the issue which the plaintiff was bound to maintain, on his part, to entitle him to a verdict. His complaint was, that the defendant, by means of a dam,

in the river, had backed water on the plaintiff's land lying further up on the stream. He proved that the dam was there, and was maintained by the defendant; and he offered evidence to show that thereby his land was injured by means of the back-water. Had the evidence left the case here, *prima facie* the plaintiff would have been entitled to recover, and the burthen of proof would have been cast upon the defendant, to show his legal right to maintain the obstruction. This he might have done by showing a right by grant, by license, or by prescription. But it was shown, by the cross-examination of the same witnesses by whom the plaintiff had proved the obstruction, that the dam had been there for more than twenty years; and this fact made it incumbent on the plaintiff to prove that within that twenty years the dam had been raised by the defendant, or had been maintained by him, at a greater height than his legal rights entitled him. The plaintiff then attempted to show what the legal rights of the defendant were in reference to the dam. He attempted to show that the defendant held by *grant*, and for this purpose offered in evidence the title deeds under which the defendant held. These title deeds were mere conveyances of the land on which the mill is situated, and do not convey any right to maintaining a dam. It was admitted that they cover the mill property; and they were received in evidence without objection. By their title deeds and other evidence as to the possession under them, it appeared that defendant held under John Bayles, who, while in possession in 1818, claimed and exercised the right of maintaining this same dam. The question was then fairly presented as to the extent of this right. If the plaintiff could prove the extent of this right, as it existed in the defendant's grantor, and could then show that the dam was maintained by the defendant at a greater height than the defendant's grantor claimed the right to erect and maintain it, such proof would cast the burthen upon the defendant of showing some better claim or right, which he possessed to

Ten Eyck v. Runk.

continue the obstruction as such increased height. The evidence offered showed that John Bayles claimed the right of raising the dam only three feet. If it was competent for the plaintiff to show to what extent the grantor, under whom the defendant held his title, claimed and exercised the right of maintaining the dam, then this letter of John Bayles was legal evidence for that purpose. The question was as to the extent of the right under the title offered in evidence. The rule is, where a party, by his admissions, has qualified his own right, and another claims to succeed him, he succeeds only to the right as thus qualified at the time when his title commenced. 1 *Greenl.*, § 189, *and notes ; Townsend* v. *Johnson and others,* 2 *Penn.* 706 ; *Tomlin* ads. *Den,* 4 *Harr.* 77 ; *Strickler* v. *Todd,* 10 *Serg. & Rawle* 63 ; *Dorsey* v. *Dorsey's heirs,* 3 *Harr. & Johns.* 426 ; *J. R.* 343 ; 1 *Esp. Ca.* 558 ; 2 *T. R.* 53.

But it was said that the title, or estate, which a man holds by deed, cannot be qualified or limited by any admissions or declarations of a former owner of the land. This is true to a certain extent. If the title deeds in question granted a right to a dam in the river four feet high, it would not be competent to show that John Bayles claimed only the right to a dam three feet high. But where the title deeds convey a tract of land by metes and bounds, which embraces within its boundaries a waterpower, without specifying the extent of that power, it is competent to show to what extent the right to this powerwas exercised by a former owner and occupier of the land, and for that purpose his admission, as to the extent which he occupied the right, is admissible against his successor or grantee. If the defendant's right to the water-power was derived by deed from John Bayles, and the extent of that right does not appear on the face of the title deeds, then when the defendant attempts to exercise the right, thus derived from John Bayles, in derogation of the plaintiff's rights, it is competent for the plaintiff to show, by the declarations of John Bayles, the extent of the right which

the defendant claims to exercise, and to which the defendant has succeeded as Bayles' grantee.

The defendant is not concluded by this evidence. He may show that he has a grant for the right he is exercising from some other source, or that he has exercised it for more than twenty years adversely to the plaintiff. Suppose the plaintiff, after showing that the dam, at the time of the commencement of the suit, was four feet high, and offered to show that the doctor, while in possession, claiming title in 1818, had declared that he had a grant for the dam, and that the grant gave him the right to maintain that dam at three feet and no more, can there be a question but that such evidence would have been relevant to the issue and admissible in evidence? The declarations of John Bayles, if legal evidence on account of the privity of estate existing between him and the defendant, are certainly as relevant to the issue as the defendant's own declarations, at the same time, and under like circumstances, would be. The declarations of John Bayles, under the circumstances, were legal, and relevant to the issue, and the letter was therefore improperly rejected, when offered as evidence.

This letter was again offered in evidence by the plaintiff, after the defendant had rested his defence. If any doubt could exist as to the admissibility of this evidence, at the point of time when it was first offered in evidence, that doubt could not exist after the defence made on the part of the defendant.

The defendant proved that the dam had been several times washed away within twenty years, and had been re-erected and repaired by him. One of his witnesses said that he had known the dam ever since 1821, and that the whole dam, from end to end, had remained the same. Another swore that the dam was lower than it was twenty-five years ago. In view of this evidence, it was certainly competent for the plaintiff to prove that this dam was maintained at only three feet high by the former owner

State v. Newark.

and occupier, under whom the defendant holds, and that this was the extent of the right claimed by him. If it appeared in evidence that the dam, as it existed when the suit was brought, was more than three feet high, it was a question for the jury to determine, whether it had been raised higher than the three feet at the time it was repaired or re-erected by the defendant, or whether the doctor, by an adverse possession of more than twenty years, had acquired a right to maintain the dam at a height above three feet.

*For affirmance*—Judges RISLEY and VALENTINE.

*For reversal*—The CHANCELLOR, Judges OGDEN, ELMER, HAINES, RYERSON, VREDENBURGH, ARROWSMITH, CORNELISON, HUYLER, and WILLS.